1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   DAVID ANGEL SIFUENTES, III,                CASE NO. C21-5613JLR

11                          Plaintiff,          ORDER

         v.
12
     NAUTILUS, INC.,
13
                            Defendant.
14

15                          **I.   INTRODUCTION**

16      Before the court are:  (1) *pro se* Plaintiff David Angel Sifuentes, III's motion to

17   transfer venue to Michigan (Transfer Mot. (Dkt. # 29); Transfer Reply (Dkt. # 35); Supp.

18   Transfer Reply (Dkt. # 36)); and (2) Mr. Sifuentes's motion for judgment on the

19   pleadings (MJOP (Dkt. # 28)[1]; MJOP Reply (Dkt. # 34)).  Defendant Nautilus, Inc.

20

21      ───────────────────
        [1] Mr. Sifuentes's motion for judgment on the pleadings appears on pages 4-5 of the
22   pleading titled "[Plaintiff's] response to [Defendant's] answer and request for judgment on the
     pleadings of the breach of warranty claim."  (*See generally* MJOP (capitalization omitted).)

1 | ("Nautilus") opposes both of Mr. Sifuentes's motions. (Transfer Resp. (Dkt. # 32);

2 | MJOP Resp. (Dkt. # 30).) The court has considered the motions, the parties' submissions

3 | in support of and in opposition to the motions, the relevant portions of the record, and the

4 | applicable law. Being fully advised,[2] the court DENIES Mr. Sifuentes's motion to

5 | transfer venue and DENIES Mr. Sifuentes's motion for judgment on the pleadings.

6 | ## II.    BACKGROUND

7 | Mr. Sifuentes's claims revolve around a Bowflex Treadclimber TC 200

8 | ("Treadclimber") that he purchased from Nautilus in November 2017. (*See* SAC (Dkt.

9 | # 8) at 2-4.) The Treadclimber came with a three-year warranty. (*Id.* at 2; *see also id.*,

10 | Ex. A ("3-Year Warranty").) Mr. Sifuentes claims that throughout the three-year

11 | warranty period the Treadclimber "would consistently break down," its computer

12 | malfunctioned, and its railing broke off. (*Id.* at 2 (asserting that he fell off the

13 | Treadclimber when the railing broke off).) He allegedly filed several claims with

14 | Nautilus yet went weeks without an operational Treadclimber while he waited for

15 | technicians to come out and repair the machine. (*Id.*) Sometime in the fall of 2020, Mr.

16 | Sifuentes purchased an "additional extended warranty 'protection plan' that extends [the

17 | Treadclimber's warranty] for about another 2 years." (*Id.* (stating that he purchased the

18 | extended warranty in November 2020); *see also* Answer (Dkt. # 26) at 2 (noting that Mr.

19 | Sifuentes purchased the extended warranty from Nautilus in September 2020 and that the

20 |

21 | ───────────

22 | [2] Neither party has requested oral argument (*see* MJOP at 4-5; Transfer Mot. at 1; Transfer Resp. at 1; MJOP Resp. at 1), and the court has determined that oral argument would not be helpful to its disposition of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

extended warranty "was fulfilled by a third party").)  However, the Treadclimber

allegedly "smoked," "crashed," and then "stopped working" a few months later.  (SAC at

2 (alleging that he was concerned about "how dangerous" the machine had become).)

Mr. Sifuentes "immediately" notified Nautilus, but Nautilus allegedly transferred the

matter to the third party responsible for the extended warranty.  (*Id.*)  He claims that the

Treadclimber "still has not been repaired."  (*Id.*)

Mr. Sifuentes initiated the instant suit on August 25, 2021.  (*See* IFP Mot. (Dkt.

# 1).)  He brings claims for:  (1) breach of express and implied warranties under the

Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301-2312, and Michigan

state law (SAC at 2-3); (2) product liability under Michigan state law (*id.* at 3-4); and

(3) intentional infliction of emotional distress ("IIED") under Michigan state law (*id.* at

4).  After initiating this action, Mr. Sifuentes filed two motions for default judgment and

one for entry of default, all of which the court denied.  (*See* 1st MDJ (Dkt. # 15); 2d MDJ

(Dkt. # 17); MED (Dkt. # 19); 11/29/21 Order (Dkt. # 16); 12/6/21 Order (Dkt. # 18);

12/13/21 Order (Dkt. # 20).)  In its order denying Mr. Sifuentes's motion for entry of

default, the court alerted him to the fact that he had not yet served Nautilus in a manner

authorized by Federal Rule of Civil Procedure 4.  (12/13/21 Order at 3 & n.2.)  Mr.

Sifuentes then filed a motion asking the court to order the U.S. Marshals to serve

Nautilus with a copy of the summons and his second amended complaint pursuant to 28

U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3), which the court granted

because Mr. Sifuentes is proceeding *in forma pauperis* ("IFP").  (*See* Service Mot. (Dkt.

# 21); 12/21/21 Order (Dkt. # 22).)

1    After Nautilus appeared and answered Mr. Sifuentes's second amended complaint,

2    Mr. Sifuentes filed a response to its answer and a motion for judgment on the pleadings

3    regarding his breach of warranty claims.  (*See generally* Dkt.; Answer; MJOP.)  Mr.

4    Sifuentes also filed a motion to transfer venue, requesting that the court transfer this case

5    to the United States District Court for the Western District of Michigan.  (*See generally*

6    Transfer Mot.)  Nautilus opposes both motions.  (*See generally* MJOP Resp.; Transfer

7    Resp.)

8    Shortly after filing his motion to transfer venue in this court, Mr. Sifuentes filed

9    two new cases, one in the Western District of Michigan and one in a Michigan state

10   court, involving the same core set of facts and claims as his second amended complaint.

11   (Transfer Resp. at 3-4; *see also* Lewis Decl. (Dkt. # 33) ¶ 9, Ex. E (Western District of

12   Michigan complaint); *id.* ¶ 12, Ex. H (Michigan state court complaint).)  However, Mr.

13   Sifuentes recently notified the court that:  (1) he filed a motion to voluntarily dismiss the

14   case that he filed in the Western District of Michigan; and (2) the complaint that he

15   attempted to file in a Michigan state court "was returned by the clerk" and "has not been

16   refiled."  (Supp. Transfer Reply at 1.)  Thus, Mr. Sifuentes asserts that "the only case that

17   will remain pending is this case."  (*Id.*)

18                        **III.    ANALYSIS**

19   The court begins by addressing Mr. Sifuentes's motion to transfer venue before

20   turning to his motion for judgment on the pleadings.

21   //

22   //

**A.      Motion to Transfer Venue**

The court sets forth the relevant legal standard before discussing the merits of Mr. Sifuentes's motion to transfer venue.

1.   Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  The purpose of § 1404(a) is to "prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26-27 (1960)).  To support a motion to transfer under Section 1404(a), the moving party must first show that the transferee court possesses subject matter jurisdiction over the action, venue would have been proper in the transferee court, and the parties would be subject to personal jurisdiction in the transferee court.  *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); *A.J. Indus., Inc. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 503 F.2d 384, 386 (9th Cir. 1974).

The court then considers whether the convenience of the parties and witnesses and the interests of justice favor transfer.  *See* 28 U.S.C. § 1404(a).  "Under § 1404(a), the district court has discretion to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  In *Jones v. GNC Franchising, Inc.*, the Ninth Circuit

1  provided a list of relevant factors for courts to consider in determining whether transfer

2  will promote convenience and fairness, including:

3      (1) the location where the relevant agreements were negotiated and executed,
       (2) the state that is most familiar with the governing law, (3) the plaintiff's
4      choice of forum, (4) the respective parties' contacts with the forum, (5) the
       contacts relating to the plaintiff's cause of action in the chosen forum, (6) the
5      differences in the costs of litigation in the two forums, (7) the availability of
       compulsory process to compel attendance of unwilling non-party witnesses,
6      and (8) the ease of access to sources of proof.

7  *Id.* at 498-99 (directing courts to also consider the relevant public policy of the forums, if

8  any); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)

9  (discussing "private and public interest factors affecting the convenience of the forum").

10 The moving party bears the burden of demonstrating that transfer is appropriate.

11 *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

12     "While it is unusual for a plaintiff to move to transfer venue, a plaintiff may seek a

13 transfer pursuant to Section 1404(a) for the convenience of parties and witnesses and in

14 the interest of justice." *See Cox v. Ashcroft*, No. CVF05-149OWW/GSA, 2008 WL

15 802314, at *1 (E.D. Cal. Mar. 25, 2008). However, district courts in the Ninth Circuit

16 "routinely" require a plaintiff to show that there has been a change of circumstances since

17 the case was filed that warrants transfer "where a plaintiff attempts a transfer away from

18 its initial venue selection."[3]  *See Green Aire for Air Conditioning W.L.L. v. Salem*, No.

19 118CV00873NONESKO, 2020 WL 4734909, at *3 (E.D. Cal. Aug. 14, 2020) (quoting

20

21     [3] The Ninth Circuit has not explicitly addressed this issue or adopted a standard stating
    that a plaintiff must show changed circumstances. *See, e.g.*, *Howard v. CVS Caremark Corp.*,
22 No. CV 13-04748 SJO (PJWx), 2013 WL 12164627, at *2 n.4 (C.D. Cal. Aug. 22, 2013).

*B&G Foods North America, Inc. v. Embry*, No. 2:20-cv-00526-KJM-DB, 2020 WL 3605070, at *2 (E.D. Cal. July 2, 2020) (collecting cases)). "This is because, if courts did not require a plaintiff to show changed circumstances, 'a motion to transfer venue could become an unchecked tool for the plaintiff to shop among forums and between judges.'" *Id.* (quoting *Bobosky v. Adidas AG*, No. CV 10-630-PK, 2010 WL 48532945, at *6 (D. Or. Oct. 8, 2010), *report and recommendation adopted*, No. CIV 10-630-PK, 2010 WL 4828392 (D. Or. Nov. 18, 2010)).

      2.  <u>Merits of Mr. Sifuentes's Motion</u>

      Mr. Sifuentes asks that the case be transferred to the United States District Court for the Western District of Michigan.  (*See generally* Transfer Mot.)  He argues that transfer is appropriate because the Western District of Michigan courthouse is close to his home and he might be "the only witness called to the stand"; the Treadclimber is in Michigan and alleged issues with the Treadclimber occurred in Michigan; and he "does not have the resources to travel to Washington" for hearings or trial.  (*See* Transfer Mot. at 1; Transfer Reply at 1-3.)  Nautilus, on the other hand, contends that transfer is inappropriate because it would be "significantly prejudiced by a change of venue" and the convenience of the parties and witnesses and the interests of justice favor keeping this case in the Western District of Washington.  (*See* Transfer Resp. at 6-10.)

      The parties do not dispute whether the threshold requirements for transfer of venue are met (*see generally* Transfer Mot.; Transfer Resp.; Transfer Reply), and the court concludes that they are.  Because this case could have been brought in the Western District of Michigan, the decision to transfer turns on whether Mr. Sifuentes has shown a

1  change of circumstances that warrants transfer and whether the "convenience of parties

2  and witnesses" and "interest of justice" favor transfer.  The court addresses each of those

3  considerations in turn.

4        *a.  Change of Circumstances*

5        Mr. Sifuentes does not argue that the Western District of Michigan is more

6  convenient for him because his circumstances have changed since filing this action.  (*See*

7  *generally* Transfer Mot.; Transfer Reply.)  Instead, he merely alleges that he did not

8  originally sue Nautilus in the Western District of Michigan because he thought "he had to

9  file in a corporation[']s jurisdiction," but now knows that he could have filed this action

10  in a Michigan state or federal court.  (*See* Transfer Reply at 3.)  The court, however,

11  concludes that such an allegation is insufficient to establish a change of circumstances

12  that justifies transfer of this case to the Western District of Michigan.  *Compare Green*

13  *Aire*, 2020 WL 4734909, at *3-4 (finding sufficient changed circumstances where the

14  plaintiff learned during discovery that the defendant had moved its headquarters to

15  Arizona after she filed the complaint, meaning that many of the documents and witnesses

16  at issue in the case were located in Arizona), *with Aljindi v. Northcentral Univ.*, No.

17  217CV01990JAMKJNPS, 2018 WL 1071202, at *3 (E.D. Cal. Feb. 23, 2018)

18  (concluding that "[w]hile plaintiff maintains that he only brought this case in the Eastern

19  District because he had temporarily relocated to Northern California at the time," plaintiff

20  failed to demonstrate sufficient changed circumstances because "he was not prevented

21  from bringing this case in the Central District in the first instance").

22  *//*

*b. Convenience of the Parties and Witnesses and the Interests of Justice*

Even if Mr. Sifuentes had shown a sufficient change of circumstance, he has not carried his burden to show that the *Jones* factors weigh in favor of transferring this case to the Western District of Michigan.  The court addresses each factor in turn.

i.   Location Where Agreement was Negotiated and Executed

The first *Jones* factor favors venue in the location where the agreement was negotiated and executed.  *Jones*, 211 F.3d at 498-99.  This factor is neutral when the parties negotiate and execute a contract in multiple locations, or the events underlying the parties' claims largely occur over the internet.  *See Silver Valley Partners, LLC. v. De Motte*, No. C05-5590RBL, 2006 WL 2711764, at *6 (W.D. Wash. Sept. 21, 2006); *Jinni Tech Ltd. v. Red.com, Inc.*, No. C17-0217JLR, 2017 WL 4758761, at *11 (W.D. Wash. Oct. 20, 2017).  Here, Mr. Sifuentes's claims revolve around a Treadclimber that he purchased online, seemingly from his home in Michigan, from Washington-based Nautilus.  (*See* SAC at 2, 4.)  Thus, this factor weighs in favor of neither location.

ii.  State Most Familiar with the Governing Law

Where a plaintiff's claims for relief are based on federal law, two different federal courts "are presumably equally familiar with the governing law."  *Fontaine v. Washington Mut. Bank, Inc.*, No. CV 08-5659 PSG, 2009 WL 1202886, at *4 (C.D. Cal. Apr. 30, 2009).  Moreover, federal courts are equally equipped to apply state law when the applicable law is not complex.  *See, e.g.*, *Burns v. Gerber Prods. Co.*, 922 F. Supp. 2d 1168, 1172 (E.D. Wash. Feb. 12, 2013) (finding courts in the Eastern District of Washington and the District of New Jersey equally competent at applying state law when

1   the state law was not complex or specialized); *Barnstormers, Inc. v. Wing Walkers, LLC*,

2   No. 09CV2367 BEN (RBB), 2010 WL 2754249, at *3 (S.D. Cal. July 9, 2010) (finding

3   this factor neutral because a federal court in Texas would be equally adept at applying

4   California law related to unfair competition claims).  Mr. Sifuentes brings breach of

5   warranty claims under federal law and Michigan law, as well as product liability and

6   IIED claims under Michigan law.  (*See* SAC at 3-4.)  While the Western District of

7   Michigan is likely more familiar with Michigan breach of warranty, product liability, and

8   IIED law, such law is not complex or specialized and this court is equally equipped to

9   apply it.  Therefore, the court concludes that this factor is neutral.

10                     iii. Plaintiff's Choice of Forum

11         While a plaintiff's choice of forum is generally entitled to substantial deference,

12   *see Decker Coal Co.*, 805 F.2d at 843, "such deference is not warranted for a plaintiff's

13   second choice of venue."  *See Qurio Holdings, Inc. v. DISH Network Corp.*, No.

14   15-CV-00930-HSG, 2015 WL 4148962, at *4 (N.D. Cal. July 9, 2015); *see also Bobosky*,

15   2010 WL 4853295, at *6 ("[A]lthough a plaintiff's first choice of venue is strongly

16   favored, subsequent venue choices are not given the same deference because, if they

17   were, a motion to transfer venue could become an unchecked tool for the plaintiff to shop

18   among forums and between judges."); *Tiffany v. Hometown Buffet, Inc.*, No.

19   06-cv-02524-SBA, 2006 WL 2792868, at *2 (N.D. Cal. Sept. 28, 2006) (declining to give

20   any "presumption of deference for the [p]laintiffs' second choice of forum").  Because

21   Mr. Sifuentes no longer prefers his first-choice forum and his new choice of forum in the

22   //

1  Western District of Michigan is not entitled to substantial deference, the court concludes

2  that this factor is neutral.

3                       iv.  Parties' Contacts with the Forum

4          This factor focuses on the parties' contacts with the current and proposed forum.

5  *See Nw. Adm'rs, Inc. v. Mission Trail Waste Sys., Inc.*, No. C14-0709JLR, 2014 WL

6  12774813, at *3 (W.D. Wash. July 16, 2014) (stating that this factor favors transfer if the

7  proposed forum is more connected with the parties than the original forum).  In this case,

8  Nautilus has strong contacts with Washington.  Nautilus is incorporated in Washington

9  (Compl. (Dkt. # 4) at 3; Transfer Resp. at 9-10), its principal place of business is in

10 Vancouver, Washington (Corp. Disc. (Dkt. # 27)), and its employees are located in

11 Washington (Transfer Resp. at 9-10).  (*See also id.* (alleging that this forum is the most

12 convenient for Nautilus, its witnesses and employees, and its counsel).)  Mr. Sifuentes, on

13 the other hand, has strong contacts with Michigan given that he is a citizen of Michigan

14 and works and resides in Michigan.  (*See* IFP Mot. at 1; Compl. at 1-3; Transfer Reply at

15 1-3 (alleging that the Michigan forum is more convenient for him); *see also* SAC at 3-4

16 (bringing claims under Michigan law).)  Neither party asserts that Nautilus has any

17 notable contacts with Michigan beyond the events underlying this case, nor do they assert

18 that Mr. Sifuentes has any significant contacts with Washington beyond this litigation.

19 (*See generally* Transfer Resp.; Transfer Mot.; Transfer Reply.)  Accordingly, the court

20 concludes that this factor is neutral.

21 *//*

22 *//*

v.  Contacts Relating to the Plaintiff's Cause of Action in the Chosen
Forum

The fifth *Jones* factor focuses on the contacts between Mr. Sifuentes's breach of

warranty, product liability, and IIED claims and the chosen forum.  *Jones*, 211 F.3d at

498-99; *see also Nw. Adm'rs*, 2014 WL 12774813, at *3 (concluding that this "factor

does not plainly favor one party's position over the other's because there were events

related to Northwest's cause of action in both Washington and California").  The events

related to Mr. Sifuentes's claims took place in both Washington and Michigan.  (*See*

*generally* SAC at 2-4; Transfer Resp. at 9.)  Nautilus created both the product that Mr.

Sifuentes alleges was defective and the warranty that he alleges was breached in

Washington.  (*See* Transfer Resp. at 9; SAC at 2-4; Answer at 2.)  However, the

Treadclimber allegedly malfunctioned, and Mr. Sifuentes was allegedly injured, in

Michigan.  (*See* SAC at 2-4; Transfer Mot. at 1.)  Thus, this factor does not favor one

forum more than the other.

vi.  Differences in the Costs of Litigation in the Two Forums

For this factor, courts perform a relative cost analysis, determining whether

litigation costs will be significantly reduced by transferring to an alternative forum.  *See*

*Ahead, LLC v. KASC, Inc.*, No. C13-0187JLR, 2013 WL 1747765, at *12 (W.D. Wash.

Apr. 23, 2013).  The relative cost analysis focuses primarily on the venue's proximity to

witnesses.  *See Nordquist v. Blackham*, No. C06-5433FDB, 2006 WL 2597931, at *4

(W.D. Wash. Sept. 11, 2006) ("[L]itigation costs are reduced when venue is located near

most of the witnesses expected to testify or be deposed.").  "When considering the

1   difference in cost between two forums, courts disfavor transferring venue when litigation

2   costs are not significantly reduced." *Ahead*, 2013 WL 1747765, at *12.  Specifically,

3   "the transfer must be 'to a more convenient forum, not to a forum likely to prove equally

4   convenient or inconvenient.'"  *Wang v. Lb Int'l Inc.*, No. C04-2475JLR, 2005 WL

5   2090672, at *3 (W.D. Wash. Aug. 29, 2005) (quoting *Van Dusen*, 376 U.S at 645-46).

6   Courts refuse to transfer venue when "transfer would merely shift rather than eliminate"

7   costs and inconvenience.  *Decker Coal*, 805 F.2d at 843; *see also T-Mobile USA, Inc. v.*

8   *Selective Ins. Co. of Am.*, No. C15-1739JLR, 2016 WL 1464468, at *7 (W.D. Wash. Apr.

9   14, 2016) (concluding that this factor weighed against transfer where "transfer would at

10  best shift costs to T-Mobile without reducing costs overall").

11          Mr. Sifuentes identified only himself as a witness and contends that he does not

12  have the resources to travel to Washington to testify at hearings and trial.  (Lewis Decl.

13  ¶ 5, Ex. A ("Pl. Initial Disclosures"); Transfer Mot. at 1; Transfer Reply at 3.)  In addition

14  to identifying Mr. Sifuentes as a witness, Nautilus identified relevant witnesses in

15  Washington and New York, including its customer service representatives who

16  communicated with Mr. Sifuentes and Go Configure's technicians[4] who serviced Mr.

17  Sifuentes's Treadclimber or communicated with him about the Treadclimber.  (Lewis

18  Decl. ¶ 6, Ex. B ("Def. Initial Disclosures").)  Nautilus argues that transferring this case

19

20          [4] Go Configure is a third-party company whose corporate address is in New York.  (*See*
    Transfer Resp. at 3; Def. Initial Disclosures.)  The technicians who worked on Mr. Sifuentes's
21  Treadclimber at his home in Michigan or communicated with Mr. Sifuentes about the machine
    are employed by Go Configure.  (*See* Answer at 2; SAC at 2; Def. Initial Disclosures.)  Mr.
    Sifuentes does not identify potential witnesses employed by Go Configure who are physically
22  located in Michigan.  (*See generally* Transfer Mot.; Transfer Reply; Pl. Initial Disclosures.)

to the Western District of Michigan will be more costly and burdensome because it "will need its employees to travel to Michigan to testify" and it will have to obtain new counsel in Michigan. (Transfer Resp. at 6 (changing venue would require Nautilus to "essentially start over, expending time, resources, and money, retaining a new counsel and redoing work that already was done"); *id.* at 9-10 ("This is a much greater burden than plaintiff's only burden, which would be his need to travel to Washington for trial.").)

The witnesses located in New York do not affect the relative costs of litigation in this case because they would need to travel regardless. *See Ahead*, 2013 WL 1747765, at *12. Removing them from consideration, there is nothing compelling in the record to suggest that transferring this case to Michigan would do anything to reduce costs. Rather, the record suggests that a transfer would shift litigation costs from Mr. Sifuentes to Nautilus. *See Decker Coal*, 805 F.2d at 843. On balance, Mr. Sifuentes has failed to meet his burden to show that the cost of litigating in Michigan would be less than litigating in Washington. Therefore, the court concludes that this factor weighs against transfer. *See Lifelast, Inc. v. Charter Oak Fire Ins. Co.*, No. C14-1031JLR, 2014 WL 4925493, at *7 (W.D. Wash. Sept. 29, 2014) (finding that this factor weighed against transfer because "transferring venue to Utah would, at best, shift litigation costs from Travelers to LifeLast, not reduce them overall").

        vii. Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses

The availability of compulsory process only favors transfer if Michigan has the ability to subpoena more non-party witnesses than Washington, and the non-party

1   witnesses within Michigan are likely to refuse to testify.  *See Silver Valley Partners*, 2006

2   WL 2711764, at *12 (comparing the Washington and Idaho-based non-party witnesses to

3   evaluate the availability of compulsory process in each venue); *see also Lifelast*, 2014

4   WL 4925493, at *7 (concluding that this factor weighed against transfer because the

5   moving party failed to identify non-party witnesses in the proposed forum who would be

6   unwilling to testify at trial in Washington).

7            In this case, Nautilus identified non-party witnesses located in Washington, but

8   those potential witnesses are employees of Nautilus who are unlikely to refuse to testify.

9   (*See* Def. Initial Disclosures); *Reynolds v. Centimark Corp.*, No. C12-0488RSM, 2012

10  WL 5914870, at *3 (W.D. Wash. Nov. 16, 2012) (stating that "it is generally assumed

11  that witnesses within the control of the party calling them, such as employees, will appear

12  voluntarily" (quoting *FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311

13  (N.D. Ill. 1993)).  Mr. Sifuentes listed only himself as a witness and neither this court nor

14  the Western District of Michigan need to compel his testimony because he is the plaintiff

15  in this matter and plans to testify on his own behalf.  (*See* Transfer Reply at 2-3; Transfer

16  Mot. at 1; Pl. Initial Disclosures.)  Thus, Mr. Sifuentes has failed to "specifically identify

17  a single non-party witness in [Michigan] who is unwilling to testify at trial in

18  Washington."[5]  *Lifelast*, 2014 WL 4925493, at *7; (*see also* Transfer Mot.; Transfer

19  Reply; Pl. Initial Disclosures).  Accordingly, the court concludes that Mr. Sifuentes has

20

21  _____

22       [5] As discussed above, Mr. Sifuentes does not identify potential witnesses employed by
    Go Configure—namely, any technicians who worked on his Treadclimber—who are physically
    located in Michigan.  (*See generally* Transfer Mot.; Transfer Reply; Pl. Initial Disclosures.)

1   failed to carry his burden on this factor, and that this factor therefore weighs against

2   transfer.  *See Lifelast*, 2014 WL 4925493, at *7; *T-Mobile*, 2016 WL 1464468, at *7.

3           viii.    Ease of Access to Sources of Proof

4           The eighth *Jones* factor focuses on access to sources of proof—more specifically

5   the location of "the relevant witnesses and other sources of proof." *Jones*, 211 F.3d at

6   499.  Besides witnesses, this analysis focuses on the location of the assets of the sale and

7   documentary evidence.  *See Nordquist*, 2006 WL 2597931, at *4 (finding that the

8   location of assets supported transferring venue); *Silver Valley Partners*, 2006 WL

9   2711764, at *4 (finding that the location of documentary evidence supported transferring

10  venue).  Where documentary evidence can be produced electronically, absent some

11  unique difficulty, this factor does not support transfer.  *Lifelast*, 2014 WL 4925493, at *8

12  (citing *Burns*, 922 F. Supp. 2d at 1173).  The focus here is on the materiality and

13  importance of the evidence in question.  *T-Mobile*, 2016 WL 1464468, at *7 (citing

14  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1146 (9th Cir. 2001)).

15          Although Mr. Sifuentes, who lives in Michigan, has testimony that is central to

16  this action, the other witnesses who are likely to have relevant testimony—i.e., Nautilus's

17  customer service representatives and other employees and Go Configure's technicians—

18  are in Washington and New York.  (*See* Def. Initial Disclosures; Pl. Initial Disclosures;

19  *see also* Transfer Resp. at 10; Transfer Reply at 3; SAC at 2-4.)  It seems possible that a

20  Go Configure technician who worked on Mr. Sifuentes's Treadclimber is in Michigan,

21  but Mr. Sifuentes has not identified any potential witnesses employed by Go Configure

22  //

1  who are physically located in Michigan.[6]  (*See generally* Transfer Mot.; Transfer Reply;

2  Pl. Initial Disclosures.)

3      The allegedly defective Treadclimber, which is the basis of Mr. Sifuentes's claims,

4  is in Michigan, however, and would be difficult to transport to Washington for discovery.

5  (*See* SAC at 2-4.)  Evidence regarding the production of the Treadclimber and the

6  creation of the warranty, all of which is highly relevant to Mr. Sifuentes's claims, is in

7  Washington.  (*See* SAC at 2-4; Transfer Resp. at 10.)  However, to the extent that any of

8  the relevant evidence is documentary, such evidence can generally be produced

9  electronically absent some unique difficulty and is not likely to create a greater or lesser

10  burden depending on whether this matter proceeds in Washington or Michigan.  *See*

11  *Burns*, 922 F. Supp. 2d at 1168.  In sum, the court is not persuaded that either forum

12  would be more convenient in the aggregate in terms of access to sources of proof.  *See*

13  *Nw. Adm'rs, Inc.*, 2014 WL 12774813, at *6.  Thus, this factor is neutral.

14      In sum, each of the *Jones* factors is either neutral or weighs against transfer.[7]

15  Based on the record before it, the court concludes that Mr. Sifuentes has not met his

16  burden to demonstrate that the convenience of the parties and witnesses and the interests

17

18      [6] The court reminds Mr. Sifuentes that he has a continuing obligation to update his
    Federal Rule of Civil Procedure 26(a) witness disclosures as this case progresses.  *See Murray v.*
19  *S. Route Mar., S.A.*, No. C12-1854RSL, 2014 WL 12029284, at *1 (W.D. Wash. Oct. 3, 2014);
    Fed. R. Civ. P. 26(a), (e)(1).

20      [7] Because neither party argues why Washington or Michigan has a greater interest in this
21  case (*see generally* Transfer Mot.; Transfer Resp.; Transfer Reply), and because the events
    underlying this action occurred in Washington and Michigan, *see supra* Section III.A.2.b.iv, the
22  court concludes that public policy considerations do not weigh heavily for or against transfer.
    *See Nordquist*, 2006 WL 2597931, at *4; *Reynolds*, 2012 WL 5914870, at *4.

of justice favor transfer. *See Commodity* Futures, 611 F.2d at 279. Thus, the court

DENIES Mr. Sifuentes's motion to transfer venue.

**B.     Motion for Judgment on the Pleadings**

The court sets forth the relevant legal standard before discussing the merits of Mr.

Sifuentes's motion for judgment on the pleadings.

1.   <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—

but early enough not to delay trial—a party may move for judgment on the pleadings."

Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the moving party

clearly establishes on the face of the pleadings that no material issue of fact remains to be

resolved and that [they are] entitled to judgment as a matter of law." *Hal Roach Studios,*

*Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990). The standard

applied on a motion for judgment on the pleadings under Rule 12(c) is essentially the

same as that applied on a Rule 12(b)(6) motion for failure to state a claim: "the

allegations of the non-moving party must be accepted as true, while the allegations of the

moving party which have been denied are assumed to be false." *Id.*; *see also Jackson v.*

*East Bay Hosp.*, 980 F. Supp. 1341, 1345 (N.D. Cal. 1997) (stating that the court "must

construe all inferences drawn" from the facts alleged by the nonmoving party in favor of

that party).

In evaluating a Rule 12(c) motion, the court "is not required to accept as true legal

conclusions or formulaic recitations of the elements of a cause of action unsupported by

alleged facts." *QOTD Film Inv., Ltd. v. Wilson*, No. C16-0371RSL, 2017 WL 841669, at

1   *1 (W.D. Wash. Mar. 3, 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

2   When considering a motion for judgment on the pleadings, a court may consider material

3   which is properly submitted as part of the complaint without converting the motion into a

4   motion for summary judgment.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th

5   Cir. 2001).

6          2.   Merits of Mr. Sifuentes's Motion

7          Mr. Sifuentes argues that his second amended complaint sets forth factual

8   allegations that are sufficient to establish claims for breach of express and implied

9   warranties, and thus, the court should enter judgment as a matter of law in his favor on

10  those claims.  (*See* MJOP at 5; MJOP Reply at 1-2; *see also* SAC at 2-3.)  His motion

11  reiterates the allegations in his second amended complaint regarding the existence of

12  warranties for his Treadclimber, the numerous times that the machine has broken down,

13  his communications with Nautilus's customer service representatives, and the

14  defective/dangerous nature of the machine.  (*See* MJOP Reply at 1-2; *see also* SAC 2-3.)

15  However, as the moving party, it is not his pleadings, but Nautilus's, which receive the

16  benefit of the doubt at this stage in the proceedings.  *See Hal Roach Studios*, 896 F.2d at

17  1550.  Applying this standard, the court concludes that Mr. Sifuentes is not entitled to

18  judgment on the pleadings on his breach of warranty claims.

19         In its answer, Nautilus admitted that:  (1) Mr. Sifuentes purchased the

20  Treadclimber from Nautilus; (2) the machine came with a three-year warranty; (3) Mr.

21  Sifuentes contacted Nautilus several times regarding the machine; (4) Mr. Sifuentes paid

22  to have a technician come work on the machine; (5) Mr. Sifuentes purchased an extended

1    warranty protection plan for the Treadclimber; and (6) Mr. Sifuentes called Nautilus

2    claiming that "there was visible smoke and a loud sound before the Treadclimber

3    stopped." (*See* Answer at 2.)  However, it denied many of Mr. Sifuentes's "factual

4    allegations related to breach of warranty," denied "any liability for breach of warranty,"

5    and asserted "multiple affirmative defenses." (MJOP Resp. at 4 (contending that its

6    defenses, "if taken as true, . . . would lead to a dismissal of plaintiff's claims in their

7    entirety"); *see also* Answer at 2-5.)  For example, Nautilus denied Mr. Sifuentes's

8    allegations that the Treadclimber broke, smoked, crashed, or stopped working and that it

9    is or was defective and dangerous. (*Compare* Answer at 2, 4, *with* SAC at 2-3.)

10           To prevail on a breach of express warranty claim under Michigan law, Mr.

11   Sifuentes must show:  "(1) proof of an express warranty, (2) reliance by the plaintiff;

12   (3) the failure of the product to meet the warranty, and (4) damages caused by the

13   failure." *Teal v. Argon Med. Devices, Inc.*, 533 F. Supp. 3d 535, 553 (E.D. Mich. 2021)

14   (citing Mich. Civ. Jury Instruction No. 25.11).  And to prevail on a breach of implied

15   warranty claim under Michigan law, he must show:  "(1) that the product was defective;

16   (2) that the product was defective when it left the control of the defendant; and (3) that

17   the defective product caused the plaintiff's injuries." *Id.* at 543, 551 (quoting *Meemic*

18   *Ins. Co. v. Hewlett-Packard Co.*, 717 F. Supp. 2d 752, 768 (E.D. Mich. 2010)).  At this

19   time, the court cannot conclude that Mr. Sifuentes's Treadclimber is or was indeed

20   defective, failed to meet an express warranty, or caused him injury. (*See* Answer at 2,

21   4-5 (denying the same); *see also* MJOP Resp. at 4.)  And even if the record did establish

22   that the Treadclimber is or was defective, the court cannot conclude that it was in that

1    condition when it left Nautilus's control.  (*See* Answer at 2, 4-5 ("[T]here was no defect

2    in the subject product at the time it left defendant's control.").)  Moreover, material issues

3    of fact remain regarding Nautilus's relevant affirmative defenses, including its assertion

4    that Mr. Sifuentes's alleged damages were caused solely by his misuse or abuse of the

5    Treadclimber.  (*See id.* at 4.)

6         In sum, taking as true the facts in Nautilus's answer, Mr. Sifuentes is unable to

7    demonstrate that no material issue of fact remains to be resolved and that he is entitled to

8    judgment as a matter of law on his breach of warranty claims.[8]  *See Daniel v. Maxsson*,

9    No. C08-1451RSM-BAT, 2009 WL 3320596, at *2 (W.D. Wash. Oct. 13, 2009) (treating

10   denials as factual allegations to be taken as true); *QOTD Film Inv.*, 2017 WL 841669, at

11   *1 (same); *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist*

12   *Congregational Church*, 887 F.2d 228, 230-31 (9th Cir. 1989) (taking the allegations

13   underlying the defendants' affirmative defenses as true and concluding that the defenses

14   precluded judgment on the pleadings in favor of the plaintiff).  Accordingly, the court

15   DENIES Mr. Sifuentes's motion for judgment on the pleadings.

16   //

17   //

18   //

19

20        [8] Because claims under the MMWA "stand or fall with [the plaintiff's] . . . claims under
     state law," *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 n.3 (9th Cir. 2008), the
21   court does not find it necessary to address Mr. Sifuentes's breach of warranty claim under the
     MMWA at this time.  (*See also* 9/8/21 Order (Dkt. # 7) ("[A] plaintiff must first demonstrate
22   liability under a state law before turning to the MMWA." (citing *Leonard v. The Momentum
     Grp., Inc.*, No. 1:14-CV-01074- LMM, 2015 WL 11236547, at *6 (N.D. Ga. Dec. 16, 2015))).)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

### IV.   CONCLUSION

For the foregoing reasons, the court DENIES Mr. Sifuentes's motion to transfer venue (Dkt. # 29) and DENIES Mr. Sifuentes's motion for judgment on the pleadings (Dkt. # 28).

Dated this 17th day of March, 2022.

JAMES L. ROBART
United States District Judge